**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 23, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROBERT SHOWLER AND JOHNNY
DAVIDSON, individually and as special
administrator of the Estate of Kyle Adam
Brinlee,

        Plaintiffs - Appellants,

   v.

HARPER'S MAGAZINE
FOUNDATION, PETER TURNLEY,
individually and in his capacity as a
contributing editor to Harper's Magazine,

        Defendants - Appellees.

------------------------

DENVER POST CORPORATION;
MAGAZINE PUBLISHERS OF
AMERICA; NEWSPAPER
ASSOCIATION OF AMERICA; NEW
YORK TIMES COMPANY;
OKLAHOMA PUBLISHING
COMPANY; PICTURE ARCHIVE
COUNCIL OF AMERICA;
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS; TRIBUNE
COMPANY,

        Amici Curiae.

No. 06-7001

(D.C. No. 05-CV-178-S)
(E. D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

   [*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **KELLY**, **BRISCOE**, Circuit Judges and **ROBINSON**, District Judge.[**]

Plaintiffs-Appellants Robert Showler and Johnny Davidson filed this suit against Defendants-Appellees Harper's Magazine Foundation ("*Harper's*") and Peter Turnley, alleging they committed various torts when Mr. Turnley took photographs of Sergeant Kyle Brinlee's open casket at his funeral, and when *Harper's* published, promoted and sold the photographs. The district court granted summary judgment to Defendants *Harper's* and Peter Turnley, on all claims. Plaintiffs Showler and Davidson now appeal. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

Viewing the evidence in the light most favorable to Plaintiffs, the record establishes the following facts. *See Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1166 (10th Cir. 2006). Sgt. Kyle Brinlee was a soldier in the Oklahoma National Guard who was killed in action while serving in Iraq on May 11, 2004. He was the first member of the Oklahoma National Guard to be killed in action since the Korean war. As such, Sgt. Brinlee's death and funeral were the subject of intense media coverage. Robert Showler is Sgt. Brinlee's biological father;[1] and Johnny Davidson is his maternal

---

[**]Honorable Julie A. Robinson, U.S. District Judge, District of Kansas, sitting by designation.

[1]  Brinlee was adopted by Robert Brinlee, at which time Showler's parental rights were terminated.

-2-

grandfather and the personal representative of his estate.

Sgt. Brinlee's family hired Stephens Memorial Chapel in their hometown of Pryor, Oklahoma to handle the funeral arrangements. The family made the decision to open Sgt. Brinlee's casket at the funeral because his "body looked fine." Prior to the funeral, the family met with Rick Stephens, who ran the memorial chapel. The family relayed to Mr. Stephens that although the media was allowed to attend the funeral, the family did not want anyone taking pictures of Sgt. Brinlee's open casket, and they did not want to be interviewed.

Peter Turnley is an international photojournalist who was working on assignment for *Harper's*. Mr. Turnley is a Contributing Editor engaged on a contract basis to produce photo-essays. At the time of Sgt. Brinlee's funeral, Mr. Turnley was working on a photo-essay for *Harper's* concerning those grieving over deaths caused by the war in Iraq. Prior to Sgt. Brinlee's funeral, Mr. Turnley contacted Stephens Memorial Chapel multiple times to ask whether the press would be allowed to attend the funeral. He spoke to Mr. Stephens twice and the office manager, Louise Floyd, once. Mr. Stephens informed Mr. Turnley that he could attend the funeral and take photographs, but that there would be a section at the back of the auditorium designated for the press, and further, that he could not interview the family.

The funeral was held at the Pryor High School gymnasium. Over 1200 people attended the funeral and Governor Brad Henry spoke at the service. Toward the end of the funeral, Sgt. Brinlee's casket was moved to the back of the auditorium, in front of

the main exit, and opened. Governor Henry was the first in a line of people who exited by filing past the open casket on their way out of the auditorium. Mr. Turnley, along with other photographers in the press section of the auditorium, took photographs during the service. Only Mr. Turnley took photographs of Sgt. Brinlee in his open casket.

After the graveside service, Mr. Turnley approached Mr. Showler and introduced himself, and then indicated he had photographed the funeral on assignment from *Harper's*. Mr. Turnley asked Mr. Showler if he would like copies of the photographs. Mr. Showler responded affirmatively and provided Mr. Turnley with his address. Mr. Showler was unaware that Mr. Turnley had taken photographs of the open casket, however. Mr. Showler first learned of the open-casket photographs when he received copies from Mr. Turnley in the mail.

One of the photographs taken by Mr. Turnley, "the Turnley Photo," along with nineteen other photographs dealing with the mourning of Americans and Iraqis killed in the war, was published in the August 2004 edition of *Harper's*. The photo-essay was titled: "The Bereaved, Mourning the Dead, in America and Iraq." *Harper's* promoted the photo-essay, and Mr. Turnley conducted interviews about it with news agencies, appeared in television programs, and entered the photograph in numerous competitions. Defendants sold the photo-essay to French magazine *Le Monde 2* where it was also published.

Plaintiffs filed suit in diversity against Mr. Turnley and *Harper's*, alleging the following tort claims: Intentional Infliction of Emotional Distress (Count 1); Invasion of

-4-

Privacy (Count II);[2] Violation of Okla. Stat. tit. 21, § 839.1 (Count III); Fraudulent /False Misrepresentation (Count IV); Constructive Fraud, Fraud and Deceit (Count V); Unjust Enrichment (Count VI); and Negligent Hiring, Retention, and Supervision (Count VII).

On December 22, 2005, the district court entered an order granting Defendants' motion for summary judgment on all claims. The district court held that Defendants enjoyed First Amendment protection because the Turnley Photo was taken in a public place for a newsworthy article and, alternatively, that summary judgment was appropriate on the merits of each tort claim. This appeal followed.

## II.

On appeal, Plaintiffs assert that the district court erred in granting Defendants' motion for summary judgment. We review the district court's grant of summary judgment *de novo*, applying the same legal standard as the district court. *Mountain West Mines, Inc. v. Cleveland-Cliffs Iron Co.*, 470 F.3d 947, 950 (10th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[2] Plaintiffs' claim for invasion of privacy is based on three theories: appropriation, intrusion into seclusion, and publication of private facts.

When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Further, the Court has "discretion to affirm on any ground adequately supported by the record, so long as the parties have had a fair opportunity to address that ground." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1088 (10th Cir. 2006) (quotations omitted).

Before reaching any constitutional question, "federal courts must consider nonconstitutional grounds for decision." *Jean v. Nelson*, 472 U.S. 846, 854, 105 S. Ct. 2992, 2997 (1985); *see also United States v. Hardman*, 297 F.3d 1116, 1124 (10th Cir. 2002). Because we determine that none of the tort claims asserted in Plaintiffs' Second Amended Complaint can survive summary judgment, we decline to consider whether Defendants' actions were privileged under the First Amendment.

### A. Intentional Infliction of Emotional Distress

Oklahoma has adopted section 46 of the RESTATEMENT (SECOND) OF TORTS (1977). *See Miller v. Miller*, 956 P.2d 887, 900 (Okla. 1998). An action for this tort will lie only where there is extreme and outrageous conduct coupled with severe emotional distress. *Id.*

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his

resentment against the actor, and lead him to exclaim, 'Outrageous!' . . .

*Id.* at 901 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d). Also, the Defendants' conduct must be "considered in the setting in which the conduct occurred." *Chellen v. John Pickle Co.*, 446 F. Supp. 2d 1247, 1292 (N.D. Okla. 2006) (citing *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986)).

The district court acts as a gatekeeper to determine whether the Defendants' conduct may reasonably be regarded as sufficiently extreme and outrageous and whether severe emotional distress can be found based on the evidence. *Miller*, 956 P.2d at 901; *Breedon v. League Servs. Corp.*, 575 P.2d 1374, 1377 (Okla. 1978)*; see* RESTATEMENT (SECOND) OF TORTS § 46 cmt. h. If the court finds that reasonable people would differ in an assessment of this issue, then the tort claim may be submitted to a jury. *See, e.g.*, *Breedon*, 575 P.2d at 1377. Here, the district court found that the Turnley Photo was not outrageous. It based its decision on the fact that the photo accurately depicts the exact image that Plaintiffs chose to expose to approximately 1200 people who attended Sgt. Brinlee's funeral. The district court also pointed out that Plaintiffs made the decision to have an open casket at the funeral because Sgt. Brinlee's "body looked fine," and further found that the mere fact that the photograph was of a deceased person was not enough to constitute outrageous conduct.

Plaintiffs argue that whether the photograph was, in and of itself, "grotesque" is immaterial. Instead, Plaintiffs urge that it was outrageous conduct for Mr. Turnley to

-7-

disregard specific instructions from Mr. Stephens not to photograph the open casket at the funeral. Because this material fact is in dispute—Mr. Turnley denies that this condition was placed on his attendance—Plaintiffs maintain that summary judgment was inappropriate because reasonable minds could differ about whether Mr. Stephens relayed this condition and therefore, whether Mr. Turnley ignored the condition when he took the photographs.

We conclude that neither the photograph, nor the alleged breach of an agreement by Mr. Turnley constituted conduct that was so extreme and outrageous "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." RESTATEMENT (SECOND) OF TORTS § 46 cmt. d. The fact that the photograph was of a deceased's body is not, standing alone, outrageous, even if it was unauthorized. *See Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 724 (Tex. App. 2001) ("Taking pictures of a dead body is not intolerable; in fact, such pictures are frequently taken in a variety of situations. Publication of the rather dignified, albeit unauthorized, pictures . . . was not extreme and outrageous conduct . . . ."). Nor is the fact that the photograph was unauthorized transform Mr. Turnley's actions into outrageous conduct. *See Loft v. Fuller*, 408 So. 2d 619, 621–22 (Fla. Dist. Ct. App. 1981) (finding portrayal of deceased family member in book as a "ghost," without permission from his family, did not amount to outrageous conduct).

Further, it is undisputed that the photograph accurately reflects the image of Sgt. Brinlee's funeral and open casket, as seen by the 1200 people in attendance. *Compare*

*Wootten*, 59 S.W.3d at 724 *with Reid v. Pierce County*, 961 P.2d 333, 338 (Wash. 1998) (finding disclosure of autopsy photographs of deceased relatives outrageous). Such "fair and accurate media coverage of official public occasions is in the highest and best interest of the public, [and] . . . cannot be treated as actionable under this rubric." *Wright v. Grove Sun Newspaper Co.*, 873 P.2d 983, 990 (Okla. 1994). Because we agree with the district court that Defendants' actions did not rise to the level of extreme and outrageous conduct, summary judgment was appropriate on this tort claim.

### B. Invasion of Privacy

Plaintiffs assert three of the four branches of the tort of invasion of privacy: (1) appropriation; (2) publication of private facts; and (3) intrusion upon seclusion. *See* RESTATEMENT (SECOND) OF TORTS §§ 652A–E (1977) (describing the different types of privacy torts). In addition, Plaintiffs assert a claim under Okla. Stat. tit. 21, § 839.1.

For these claims, Plaintiffs rely generally on the Supreme Court's decision in *National Archives & Records Administration v. Favish*, which held that the privacy exemption in the Freedom of Information Act ("FOIA") recognizes surviving family members' right to personal privacy with respect to their close relative's death-scene images. 541 U.S. 157, 124 S. Ct. 1570 (2004). That case involved a private citizen who requested production under the FOIA of death-scene photographs of Vince Foster, deputy counsel to President Clinton, who was found dead of an apparent suicide. Plaintiffs particularly rely on language in that case that the common law has long

-9-

recognized "a family's control over the body and death images of the deceased." *Favish*, 541 U.S. at 168; 124 S. Ct. at 1578.

*Favish* is inapplicable to this analysis because it relies on a statutory privacy right under the FOIA, not a cause of action for invasion of privacy. In fact, the Supreme Court observed in *Favish* that "the statutory privacy right protected by Exemption 7(C) goes beyond the common law and the Constitution." *Id.* at 170, 124 S. Ct at 1579 (citing *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762, 109 S. Ct. 1468, 1476 (1989)). Likewise, the Court stated in *Reporters Committee* that "[t]he question of the statutory meaning of privacy under the FOIA is, of course, not the same as the question whether a tort action might lie for invasion of privacy or the question whether an individual's interest in privacy is protected by the Constitution." *Reporters Committee*, 489 U.S. at 763 n.13; 109 S. Ct. at 1476. Here, the Court will limit its reliance to the case law construing the tort of invasion of privacy and the specific Oklahoma statute at issue.

Moreover, the Supreme Court's discussion in *Favish* about the cultural history of burial rights of the deceased and surviving family members is inapposite to the facts of this case. The Court references "outrage at seeing the bodies of American soldiers mutilated and dragged through the streets," *Favish*, 541 U.S. at 168, 124 S. Ct. at 1578, as a modern example of "the interests decent people have for those whom they have lost." *Id.* This type of intrusion and exploitation of the family's grief has traditionally been considered a violation of the family's privacy rights. *Id.* Indeed, all of the cases

cited by the Court in support of its acknowledgment that the common law has recognized a family's right to control the death images of the deceased, involve death images that are gruesome and none involve images displayed at a public funeral. *See id.* at 169, 124 S. Ct. at 1578–79 (collecting cases).

Courts that have found an invasion of privacy have done so when the case involves death-scene images such as crime scene or autopsy photographs.[3] The photographs here are not death-scene photographs, but images of Sgt. Brinlee in his military uniform that accurately depict the image seen by those who attended his funeral to pay their respects. Coupled with the public nature of this funeral, the photographs are distinguishable from those at issue in *Favish*.

We now address the specific theories of liability asserted by Plaintiffs.

**1.  Appropriation and Okla. Stat. Ann. tit. 21, § 839.1**

Oklahoma has codified the cause of action for appropriation of a person's name or likeness in Okla. Stat. Ann. tit. 21, § 839.1 (2002). Under the RESTATEMENT (SECOND) OF TORTS § 652C, "[o]ne who appropriates to his own use or benefit the name

_____

[3]    *See, e.g., id.* at 161, 124 S. Ct. at 1574; *Reid v. Pierce County*, 961 P.2d 333, 338 (Wash. 1998); *McCambridge v. City of Little Rock*, 766 S.W.2d 909, 915 (Ark. 1989); *c.f. Bazemore v. Savannah Hosp.*, 155 S.E. 194 (Ga. 1930) (finding invasion of privacy where, after performing surgery on a baby born with his heart on the outside of his body, hospital employees allowed a photographer to photograph the child's body and a newspaper to report on the baby's condition, unbeknownst to the parents.), *called into question by Waters v. Fleetwood*, 91 S.E.2d 344, 348 (Ga. 1956). *But see Bremmer v. Journal-Tribune Publ'g Co.*, 76 N.W.2d 762, 766–67 (Iowa 1956) (explaining that *Bazemore* was an extreme set of facts and that the majority of courts have declined to find liability when the press publish details of gruesome death scenes).

or likeness of another is subject to liability to the other for invasion of his privacy." Plaintiffs appear to bring separate claims for appropriation under both the common law and statutory law, despite the fact that the statute overlaps with the Restatement's formulation of the cause of action. *See Le Flore v. Reflections of Tulsa, Inc.*, 708 P.2d 1068, 1074 (Okla. 1985) (construing claim for appropriation under the Restatement as a claim under Oklahoma's appropriation statute). We agree with the district court that there is no genuine issue of material fact with regard to either source of law on appropriation.

Comment d to the RESTATEMENT § 652C is instructive:

> No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes.

The Court concludes that this comment from the Restatement squarely applies to the facts presented here. *Harper's* is not liable under an appropriation theory simply because it sought to make a profit via the circulation of its magazine when it published the photo essay that included the Turnley Photo.

-12-

With regard to the statute, the district court granted summary judgment on this claim because there was no evidence of "advertising." In so holding, the court stated that Oklahoma had, in the past, sought guidance from New York law when interpreting this statute because it was patterned after a similar New York law. *See Le Flore v. Reflections of Tulsa, Inc.*, 708 P.2d 1068, 1074 (Okla. 1985) (discussing the similarity between New York's appropriation statute and § 839.2 and looking to New York cases for guidance). New York law has made clear that right to privacy statutes do not apply to newsworthy events or matters of public concern because it is not deemed for the purposes of advertising or trade. *See, e.g.*, *Messenger ex rel. Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436, 441 (N.Y. 2000).

The New York Court of Appeals further held that "where a plaintiff's picture is used to illustrate an article on a matter of public interest, there can be no liability . . . unless the picture has no real relationship to the article or the article is an advertisement in disguise." *Id.* at 442. Sgt. Brinlee's funeral was a matter of public interest. Local and regional newspapers printed stories and photographs about his death and funeral. There was particular interest in the story since Sgt. Brinlee was the first member of the Oklahoma National Guard to be killed in action since the Korean War. There is no evidence to suggest that the Turnley Photo, or any of the other photographs taken, were not related to the photo-essay that concerned grieving in the United States and Iraq over deaths caused by the war in Iraq. And, the fact that the photo essay was promoted and sold to another publication does not render it an advertisement under the

-13-

statute. *Messenger*, 94 N.Y.2d at 442 ("[T]he fact that a publication may have used a person's name or likeness 'solely or primarily to increase the circulation' of a newsworthy article—and thus to increase profits—does not mean that the name or likeness has been used for trade purposes within the meaning of the statute."). The Turnley Photo did not constitute an appropriation of Sgt. Brinlee's likeness for commercial purposes under either the Restatement or the statute and summary judgment was appropriate on these claims.

### 2. Publication of Private Facts

In order to recover for invasion of privacy by publication of private facts, the publication must: (1) be highly offensive to a reasonable person; (2) contain private facts; (3) be a public disclosure of private facts; and (4) not be of legitimate concern to others. *Guinn v. Church of Christ of Collinsville*, 775 P.2d 766, 781 (Okla. 1989). The district court found that Plaintiffs failed to establish that the Turnley Photo contained private facts about their lives or that there was a public disclosure of a private fact. Further, the district court found that because the funeral was a newsworthy event, it was of legitimate concern to others, especially considering the fact that this was the first Oklahoma National Guardsman to die in combat since the Korean War.

Plaintiffs argue on appeal that the family's mourning over Sgt. Brinlee's death was a deeply private manner. They also maintain that Mr. Turnley acknowledged this by contacting Mr. Stephens to request permission to attend, which he would not have done had he believed it to be a public event. Defendants respond that under Comment a

-14-

to RESTATEMENT (SECOND) OF TORTS § 652D, the Plaintiffs left themselves "open to the public eye."

We agree with Defendants that Plaintiffs opened up the funeral scene to the public eye and can not, therefore, establish that Defendants disclosed private facts by publishing the Turnley Photo. The local newspaper notified the public in advance of the time and place of Sgt. Brinlee's funeral, and it was held in a high school gymnasium to accommodate the large crowd expected to attend. Governor Henry spoke at the funeral, which was attended by 1200 people. Most attendees exited the funeral by first filing past Sgt. Brinlee's open casket. Numerous area newspapers published stories about Sgt. Brinlee's death and funeral. These facts belie the notion that the Turnley Photo revealed information that was private and summary judgment is appropriate on this claim.

### 3. Intrusion Upon Seclusion

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." RESTATEMENT (SECOND) OF TORTS § 652B (1977). The Oklahoma Supreme Court has recognized the following two necessary elements of this claim: (1) a nonconsensual intrusion, (2) which is highly offensive to a reasonable person. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1220 (10th Cir. 2003) (citing *Gilmore v. Enogex, Inc.*, 878 P.2d 360, 366 (Okla. 1994)). Publication is not necessary to maintain

-15-

an action for this tort; the intrusion itself creates liability. *See* RESTATEMENT (SECOND) OF TORTS § 652B cmt. b.

We agree with the district court that there was no genuine issue of material fact about whether Mr. Turnley intruded into the private affairs of Plaintiffs for the same reasons that summary judgment is appropriate on the other privacy claims. Even if the Court assumes Plaintiffs can meet their burden of establishing a genuine issue of material fact that an intrusion occurred, there is no evidence upon which a reasonable jury could conclude that the intrusion was highly offensive to a reasonable person. As already discussed, the photographs accurately depicted a funeral that Plaintiffs held out to the public. Details about the funeral were published in the local newspaper and it was held in a high school gymnasium in order to accommodate the 1200 people who attended, which included the Governor of Oklahoma. Mr. Turnley took the photographs from an area of the high school auditorium that was specifically designated for the press and other photographers were present. The district court did not err in granting summary judgment to Defendants on this claim.

### C. Fraud Claims

Plaintiffs asserted claims for fraudulent or false representation and constructive fraud based on Mr. Turnley's conversation with Mr. Stephens in which Plaintiffs argue Mr. Stephens placed the specific condition on Mr. Turnley's attendance at the funeral that he not photograph the open casket. The district court granted summary judgment to Defendants on these claims because, based on the uncontroverted facts, any

misrepresentation or fraud committed by Mr. Turnley was made toward Mr. Stephens and not the Plaintiffs in this matter. Plaintiffs appeal the district court's order and argue that it misapplied principles of agency law in granting summary judgment on these claims.

Plaintiffs do not allege a contract existed between the parties, but instead base these claims on an unkept promise. Oklahoma law requires the following elements to establish a claim for a false or fraudulent misrepresentation: (1) the defendant made a material misrepresentation; (2) that was false; (3) the defendant made the misrepresentation knowing it was false, or in reckless disregard of the truth; (4) the defendant made the representation with the intention that it should be acted upon by the plaintiff; (5) the plaintiff acted in reliance upon it; and (6) plaintiff thereby suffered injury. *Sturgeon v. Retherford Publ'ns, Inc.*, 987 P.2d 1218, 1228 (Okla. Civ. App. 1999) (citing *Ramsey v. Fowler*, 308 P.2d 654, 656 (Okla. 1957)).

Even if Plaintiffs are correct that the district court misapplied agency principles when it granted summary judgment on the fraud claims, Plaintiffs are unable to establish that when Mr. Turnley allegedly promised Mr. Stephens that he would not photograph the open casket, he did not intend to perform that promise. Under Oklahoma law, the general rule is that when a false representation is the basis of the fraud, that representation must relate to existing facts or previously existing facts, and not to promises of some future act. *Roberts v. Wells Fargo AG Credit Corp.*, 990 F.2d 1169, 1172 (10th Cir. 1993). An exception to this rule exists where such a promise to act in

-17-

the future is made with the intention not to perform and with the intent to deceive. *Id.* "The gist of the rule is not the breach of promise but the fraudulent intent of the promisor at the time the pledge is made not to perform the promise so made and thereby deceive the promisee." *Citation Co. Realtors, Inc. v. Lyon*, 610 P.2d 788, 790 (Okla. 1980).

Plaintiffs are unable to point the Court to evidence of Mr. Turnley's intent at the time he spoke to Mr. Stephens on the phone prior to the funeral. Instead, they argue that the issue is one of credibility, which should be made by a jury. Yet Plaintiffs produce no evidence refuting Mr. Turnley's stated lack of intent, nor any evidence disputing the credibility of Mr. Turnley's statement that he lacked such intent.

Furthermore, the claims fail because Plaintiffs are unable to establish that they acted in reliance upon any statement allegedly made by Mr. Turnley. While there is a disputed fact about whether Mr. Turnley at least implicitly agreed not to photograph Sgt. Brinlee's open casket as a condition of his attendance at the funeral, other photographers were present at the funeral. And there is no evidence that the media was required to contact Mr. Stephens ahead of time to obtain permission to attend. While some members of the public did inquire with Stephens Memorial Chapel about whether the press would be allowed to attend the funeral, there is no evidence that this was required. The funeral was open to the public, and there were no signs limiting the photographers' permission to photograph the funeral. These facts reveal no genuine issue of material fact about whether Plaintiffs reasonably relied on a promise by Mr.

Turnley in allowing him to attend as a member of the press.  Summary judgment is thus appropriate on Plaintiffs' fraud claims.

### D.  Unjust Enrichment

Plaintiffs' claim for unjust enrichment is based on the allegation that Defendants were unjustly enriched by the publication and promotion of the Turnley Photo.  "The term 'unjust enrichment' describes a condition resulting from the failure of a party to make restitution in circumstances where it is inequitable." *N.C. Corff P'ship v. OXY USA, Inc.*, 929 P.2d 288, 295 (Okla. Civ. App. 1996); *see also Lapkin v. Garland Bloodworth, Inc.*, 23 P.3d 958, 961 (Okla. Civ. App. 2000).  Unjust enrichment is a theory of recovery and requires "enrichment to another coupled with a resulting injustice." *N.C. Corff P'Ship*, 929 P.2d at 295.  As the district court properly reasoned, there is no evidence here of any advantage to *Harper's* or Mr. Turnley at the expense of Plaintiffs.  Likewise, there is no evidence of injustice to the Plaintiffs.  Plaintiffs argue that the photo was used to promote the magazine and Mr. Turnley at the expense of their right to privacy.  As this Court has already determined, there is no genuine issue of material fact with regard to Plaintiffs' right to privacy claims.  Summary judgment was appropriate on Plaintiffs' unjust enrichment claim.

### E.  Negligent Hiring

An employer may be held liable in Oklahoma for negligent hiring, supervision, or retention of an employee.  *See Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1156 (10th Cir. 2006); *N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 600 (Okla. 1999).  The

employer may be liable, "if—at the critical time of the tortious incident—the employer had reason to believe that the person would create an undue risk of harm to others. Employers are held liable for their prior knowledge of the servant's propensity to commit the very harm for which damages are sought." *Presbyterian Church (U.S.A.)*, 998 P.2d at 600.  Because we find that summary judgment is appropriate on all of Plaintiffs' underlying claims, *Harper's* may not be found liable to Plaintiffs based on its hiring, supervision, or retention of Mr. Turnley.  Further, Plaintiffs do not point to any evidence of prior knowledge by *Harper's* of any propensity by Mr. Turnley to commit any of the torts alleged against Mr. Turnley in the Second Amended Complaint.

**III.**

While it could be argued that publication of the Turnley Photo without prior authorization was in poor taste, for the reasons discussed, it does not constitute an actionable claim under any of the theories advanced by Plaintiffs.  Because we conclude that summary judgment was appropriate on each of the Oklahoma state tort claims asserted by Plaintiffs in this action, we need not address the First Amendment defense asserted by Defendants in this appeal, nor do we make any statement as to the merits of that defense.  The judgment of the district court is affirmed.  The motion for leave to file an amicus brief by Denver Post Corporation, Magazine Publishers of America, Newspaper Association of America, New York Times Company, Oklahoma Publishing Company, Picture Archive Council of America, The Reporters Committee for Freedom

of the Press and Tribune Company is granted.

                                        Entered for the Court


                                        Julie A. Robinson
                                        District Judge